**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

TAYLOR DOLCE, on behalf of herself and all
others similarly situated,

                         Plaintiff,

       v.

THE LIV GROUP INC.,

                         Defendant.

Case No.: 7:22-cv-03858-PMH

**AMENDED COMPLAINT**

---

    Plaintiff Taylor Dolce, on behalf of herself and all others similarly situated ("Plaintiff"),

by and through her undersigned counsel, Denlea & Carton LLP, states for her Amended

Complaint against The LIV Group Inc. ("LIV"), as follows:

## PRELIMINARY STATEMENT



*"1 Liquid I.V. can provide the same hydration as drinking 2-3 bottles of water."*

    1.    This action seeks to redress the false, misleading and deceptive advertising and

packaging claims that have made LIV one of the world's largest manufacturers of electrolyte

drink mixes; namely, the claims that (a) its product "Liquid I.V. Hydration Multiplier" ("Liquid

I.V."), when added to a glass of water, can multiply the hydration properties of that water two to

three times, and (b) Liquid I.V.'s miracle "hydration multiplier" is made possible by the "groundbreaking" and "breakthrough" "Cellular Transport Technology" LIV "created."  As set forth in more detail below, those claims are blatantly false and deceptive.

2.      The global market for electrolyte drinks in 2020 was $20.7 billion and that market is expected to grow to $31 billion in 2025.[1]  The market for electrolyte drink mixes like Liquid I.V was $3.47 billion in 2020 and is expected to grow faster than the electrolyte drink market as a whole and is projected to reach $6.88 billion by 2025.[2]

3.      Electrolyte drinks and mixes are remarkably simple concoctions, most often combining just three active ingredients of salt and potassium as electrolytes, and sugar (or some other easily digested carbohydrate) which accelerates the absorption of the electrolytes.  That is a formulation recognized around the world for treating dehydration from diarrhea for at least 50 years.  Notably, LIV did not create a new "technology" when it copied a 50-year-old electrolyte mix.

4.      The only way for manufacturers and retailers to differentiate their product in an increasingly crowded field of electrolyte replacement offerings is bulk advertising, endorsements from athletes and other influencers, and marketing with exorbitant claims.  Unfortunately for unsuspecting consumers, one of the most outlandish claims in the electrolyte drink market is LIV's claim that its Liquid I.V. "utilizes the breakthrough science of Cellular Transport Technology®" that can mysteriously transform one bottle of water into two or three bottles of water.  In truth, Liquid I.V. is no different than the majority of the electrolyte drinks and mixes

---

[1]     https://www.globenewswire.com/news-release/2021/09/21/2300795/0/en/Electrolyte-Drinks-Market-is-Anticipated-to-Hit-USD-31-0-Billion-by-2027-AllTheResearch.html

[2]     https://www.yahoo.com/now/electrolyte-mixes-global-market-report-144600571.html

on the market; it has no proprietary "Cellular Transport Technology," it is not a "hydration multiplier," and Liquid I.V. cannot magically double or triple water's hydration volume.

5.      In fact, Liquid I.V. concedes that its formulation is neither novel nor unique but, rather, based entirely on a hydration formulation developed by the World Health Organization 50 years ago to treat deadly dehydration in the third world from diarrhea.[3]  According to Liquid I.V.'s website:

> Liquid I.V. is based on the World Health Organization's guidelines for Oral Rehydration Solution, a rigorously-tested combination of sodium, glucose, and water known to combat the extremely undesirable effects of dehydration.  The discovery of the sodium-glucose transport mechanism to increase absorption of water is considered to be one of the most important medical advances this century.  Oral Rehydration Solution is used in developing countries and disaster zones all over the world where people are most in need of hydration.[4]

In other words, LIV admits that its Liquid I.V. product is not a new or breakthrough discovery, but simply a deceptively marketed oral rehydration formulation developed 50 years ago by the World Health Organization.

6.      LIV is well-aware that that its "one bottle equals three" and "hydration multiplier" claims are false.  After being falsely marketed for at least 8 years as a "hydration multiplier" that turns "one bottle into three" and selling over 500 million servings,[5] it changed some of its packaging and much of its marketing to modify its "one bottle equals three" claim in or about January 2022.  Minimizing the "one bottle equals three" claim that was the hallmark of Liquid I.V.'s ubiquitous packaging and marketing is a powerful acknowledgement by LIV that its claims are untrue and deceptive.[6]  Significantly, however, product with the old labeling is still

---

[3]     https://rehydrate.org/ors/who-unicef-statement.html

[4]     https://www.liquid-iv.com/pages/science

[5]     https://www.linkedin.com/pulse/from-crazy-dream-half-billion-servings-sold-our-incredible-cohen/.

[6]     LIV has also tried to "hide its tracks" by erasing its website history on the Wayback Machine hosted by the

readily available online and in stores.  Disturbingly, the old packaging still predominates on store shelves (below).[7]



---

Internet Archive project.  Companies like LIV can make an active decision to exclude their website history from the Wayback Machine.  The only reason why LIV would erase its website history is to hide its false claim that "one bottle equals three."  As stated, however, that false claim continues in the marketplace and even on LIV's own website.

[7] Photographs taken on May 4, 2022 at Wegmans in Harrison, NY.

4



7.      Moreover, Liquid I.V. did not eliminate or minimize its claim to being a "hydration multiplier" or that Liquid I.V. contains "Cellular Transport Technology."  To this day, many of Liquid I.V.'s largest retailers still sell Liquid I.V. with the false "one bottle equals three" marketing and packaging, including Costco[8], CVS[9], Whole Foods[10], Walgreens[11], Wegmans[12] and others.  In addition, Liquid I.V. continues to use its "one bottle equals three" marketing in parts of its website.[13]

---

[8]    https://www.costco.com/liquid-i.v.-hydration-multiplier%2c-30-individual-serving-stick-packs-in-resealable-pouch.product.100301223.html

[9]    https://www.cvs.com/search/?searchTerm=liquid%20iv

[10]   https://www.wholefoodsmarket.com/product/liquid-iv-lemon-lime-hydration-multiplier-10-count-565-oz-b08vs3cwb8

[11]   https://www.walgreens.com/store/c/liquid-i.v.-hydration-multiplier-electrolyte-drink-mix-lemon-lime/ID=300397357-product

[12]   https://shop.wegmans.com/product/226204/liquid-i-v-hydration-multiplier-electrolyte-drink-mix-strawberry

[13]   https://www.liquid-iv.com/articles/liquid-ivs-science-explained

8.     Plaintiff and thousands, if not millions, of consumers have been misled by LIV's false and misleading marketing and packaging.  Plaintiff and others were sold a product that falsely promised the valuable attribute of the purported "breakthrough science of the Cellular Transport Technology" which would provide two to three times the hydration of water when, in fact, they were sold nothing but a sugar, salt and water mix that was developed for severe diarrhea, almost half a century ago, for use in third world countries.

9.     By this action, Plaintiff seeks to redress LIV's unfair and deceptive marketing campaign built upon the misleading promise that Liquid I.V. provides two to three times the hydration of plain water and based on the false claim that it utilizes fictional "Cellular Transport Technology," and to obtain the financial recompense to which Plaintiff and her fellow class members are entitled.[14]

## THE PARTIES

10.     Plaintiff Taylor Dolce is an individual who resides in Pawling, New York.

11.     Defendant The LIV Group Inc. is a Delaware corporation with its principal address at 777 S. Aviation Boulevard, Suite 105, El Segundo, CA 90245.

12.     Upon information and belief, LIV manufactures, markets and sells the Liquid I.V. Hydration Multiplier product through over 35,000 online and brick-and-mortar retail stores such as CVS, Costco, Walgreens, Rite Aid, Target, Walmart, Wegmans and Amazon.[15]

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy

---

[14]   Similarly, Plaintiff seeks to put the numerous other manufacturers and sellers of purportedly "hydration multipliers" on notice that their unlawful conduct will not be ignored so that they stop misleading consumers.

[15]   https://www.linkedin.com/pulse/from-crazy-dream-half-billion-servings-sold-our-incredible-cohen/

exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named

Plaintiff and Defendant are citizens of different states.  28 U.S.C. § 1332(d)(2)(A).

14.     The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a),

as the parties are diverse and the amount in controversy exceeds the requisite threshold.

15.     This Court may exercise jurisdiction over Defendant because Defendant has

sufficient minimum contacts in New York and purposely avails itself of the markets within New

York through the promotion, sale, marketing, and distribution of its products, thus rendering

jurisdiction by this Court proper and necessary.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district

and because Defendant has marketed and sold the products at issue in this action within this

judicial district and has done business within this judicial district.

## CHOICE OF LAW

17.     New York law governs the state law claims asserted herein by Plaintiff and the

New York class she seeks to represent.

18.     New York has a substantial interest in protecting the rights and interests of New

York consumers against wrongdoing by companies that market and distribute their products

within the State of New York.

## FACTUAL BACKGROUND

### I.     LIQUID I.V. IS FOUNDED IN 2012 BY A 24-YEAR-OLD ENTREPRENEUR

19.     Brandin Cohen, the founder of Liquid I.V., was a student at Loyola Marymount

University on a golf scholarship.  He took an "entrepreneurship" course his senior year in 2010

and, upon graduation, worked in marketing and sales for the Arizona Diamondbacks major

league baseball team.  According to Cohen, he witnessed the players drinking sports drinks and

in 2012, he began learning the science of "Oral Rehydration Therapy," developed in the 1970's by the World Health Organization and deemed to be one of the most important medical advancements of the 20th century *for developing countries*.

20.     That breakthrough was created to aid children in developing countries suffering from extreme dehydration caused by deadly diseases such as cholera, dysentery, and severe diarrhea.  Cohen says he searched for any beverage utilizing this "technology" but couldn't find anything.  He decided to bring this "untapped science" to market and created Liquid I.V. which officially launched in December 2012.[16]

21.     For the next 8 years, Liquid I.V. was aggressively marketed and distributed, reaching sales of 500 million servings through 35,000 online and brick and mortar sellers.  At all times, it was a solution in search of a problem, as the conditions endemic in the third world did not exist in this country.  Indeed, the United States donated $700 million to the WHO last year.  If any combination of sugar, salt and water was needed in this country, it would have been made available.  It was not needed, as the conditions referenced by LIV do not exist in this country.

22.     In September 2020, LIV and its product, Liquid I.V., was sold to the giant consumer products company, Unilever, for an undisclosed sum.  According to Cohen, the sale of Liquid I.V. to Unilever "created life changing wealth for 80+ of my closest friends, family, employees and outside investors…"[17]

## II.     A SHORT HISTORY OF "ORAL REHYDRATION SALTS"

23.     Oral Rehydration Therapy ("ORT") refers to the treatment of dehydration using oral rehydration salts ("ORS") which is "an extraordinarily simple solution consisting of sugar,

---

[16]   https://ideamensch.com/brandin-cohen/

[17]   https://www.linkedin.com/pulse/from-crazy-dream-half-billion-servings-sold-our-incredible-cohen/

salts and water[.]"[18]  The exact year and place ORT was developed in the form the world

understands it now is obscure, but there is no debate as to why it was developed:  "During the

late 1970s world health experts estimated that the approximately 500 million annual episodes of

diarrhoea (sic) in children under the age of five resulted in at least five million deaths per year.

These generally occurred in the developing world, where one in ten children died of diarrhoea

(sic) before the age of five….The dehydration it causes can quickly destroy the ability of a body

to function.  Children under the age of five are especially susceptible to diarrhoea (sic), and in

severe cases their mortality rate often exceeds 50 per cent".[19]  "Before [ORT's] promotion

worldwide in the late 1970s, the majority of people with diarrhoea (sic) dehydration had no

access to effective treatment.  ORT can be utilized effectively in even the most isolated parts of

the world and today saves the lives of over one million children annually."[20]

24.     The World Health Organization ("WHO") promoted ORT using ORS starting in

1979 and revised its prescribed formula in 2002. [21]

## III.    LIV FALSELY CLAIMS THAT A "TYPICAL" PERSON NEEDS LIQUID I.V.'s ORS JUST LIKE A PERSON WITH SEVERE DIARRHEA

25.     The cornerstone of Liquid I.V.'s deception is its effort to conflate the loss of

water through the digestive system from extreme diarrhea, such as is commonplace in Third

World countries, with a purported loss of water experienced by a "typical" person, in America.

According to LIV, "[t]ypically, when you drink fluids, they pass through the entire digestive

---

[18]    Ruxin, J N. "Magic bullet: the history of oral rehydration therapy." *Medical history* vol. 38,4 (1994): 363-97. (Available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1036912/ )

[19]    *Id.* at 365.

[20]    *Id.* at 363.  Ruxin's history was published in 1994 and the number of deaths from diarrhea have continued to drop.  UNICEF estimated that in 2013 one in three children under 5 who had diarrhea receive ORS.  *See* https://en.wikipedia.org/wiki/Oral_rehydration_therapy

[21]    https://rehydrate.org/ors/who-unicef-statement.html

system, losing water before your body can absorb it." That is false. In a person without diarrhea, the water in food and drinks is functionally absorbed along the entire length of the digestive system, as needed, not lost as LIV falsely claims.[22]

26.     Were any of Liquid I.V.'s claims true, one might rightly wonder how the human species survived from the Paleolithic period, two million years ago, to the present day, without LIV. The simple reason, a truth completely ignored by Liquid I.V.'s deceptions, is the well understood processes of homeostasis.

27.     Homeostasis is a property of cells, tissues, and organisms, that allows the maintenance and regulation of the stability and constancy, needed to function properly. Homeostasis is a healthy state that is maintained by the constant adjustment of biomechanical and physiological pathways. In other words, homeostasis is naturally occurring cellular transport technology, without the Madison Avenue spin.

28.     Accordingly, Liquid I.V.'s bankrupt claim of having invented "Cellular Transport Technology" is akin to saying Western Europeans "discovered" America, when there were already millions of people living here. Cellular Transport Technology occurs naturally and automatically in the body; had this not been the case, the species would have died out long ago. Cellular Transport Technology is blatantly deceptive marketing.

29.     Liquid I.V. is little more than salt and sugar; two ingredients that are found in such abundance in the American diet, that they need to be regulated and excreted as harmful waste.

---

[22]   Popkin, Barry M et al. "Water, hydration, and health." Nutrition reviews vol. 68,8 (2010): 439-58. (Available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2908954/)

30.     Fortunately, the kidneys and pancreas are able to rescue the human body from Liquid I.V.'s attempts to overthrow the human body's natural balance.  The adrenal glands positioned atop the kidneys, secrete aldosterone, a steroid hormone which regulates sodium for either conservation or excretion by the kidneys.  The pancreas secretes glucagon and insulin, to regulate sugar levels.  These systems comprise the body's true "Cellular Transport Technology." Absent these systems keeping the body in homeostasis, incursions of sodium and sugar from products like Liquid I.V. would lead the body into diabetes, hypertension, and metabolic disorder.  Instead, the body employs the principles of homeostasis to retain, distribute, and excrete the precise amount of water required for proper functioning.

31.     Yet the deceptions of Liquid I.V. do not end with claims of having invented the human metabolism.  They also claim to be able to perform a "loaves and fishes" miracle with water.  Specifically, both by packaging materials, as well as print advertising, Liquid I.V. claims that a serving of their sugar-salt drink mix "can equal two to three bottles of water alone."

32.     It is difficult to discern which deception is more odious; that Liquid I.V. invented homeostasis, or that its drink mix can magically multiply a volume of water.  In truth, both claims are as outrageous as they are untrue.  Liquid I.V. cannot manufacture water in the human body.

33.     A less specious (although still specious) claim by Liquid I.V. would have been to allege that its product promoted "rapid rehydration."  Yet that marketing space was occupied by PepsiCo's "Gatorlyte," Abbott Laboratories' "Pedialyte" and other electrolyte drinks, so Liquid I.V. threw caution (and truth) to the winds and claimed that their drink mix was a water volume multiplier, which it is not.

34.     Liquid I.V.'s false claim of double or triple the hydration of plain water is a material deception of consumers.  Liquid I.V. itself states on its website, in a piece labeled "Finding Your Perfect Hydration Pattern" (https://www.liquid-iv.com/articles/finding-your-perfect-hydration-pattern ), that "most resources will advocate for consuming somewhere between 64 - 80 ounces of fluids, not including the fluid gained from foods.  This averages out to about 8-10 glasses of water a day."  That is commonly understood, accurate information.  Adequate hydration is critical to healthy bodily functions and dehydration can impair physical performance, cognitive performance, gastrointestinal function, kidney function, heart function and blood pressure regulation, skin health and preventing common chronic diseases.[23]  Liquid I.V. then immediately co-opts that important message to promote its false "one bottle equals three" marketing theme with the following cynical and mendacious advice:  "Notable fact: Behind on your hydration goal?  Adding Liquid I.V. to your water can take the pressure off your glass count.  When mixed with water, a serving of Liquid I.V. can equal two to three bottles of water alone. That's two-for-one hydration!"

35.     LIV's false claim that a "typical" person does not absorb all the water they drink and the false claim that Liquid I.V. provides two to three times the hydration as plain water, misled Plaintiff and thousands if not millions of consumers who reasonably believed that they would be two to three times better hydrated if they bought and consumed Liquid I.V.

IV.     **LIV FALSELY CLAIMS THAT LIQUID I.V.'S RAPID ABSORBTION IS DUE TO ITS PROPRIETARY "BREAKTHROUGH DELIVERY SYSTEM"**

36.     LIV misleadingly claims on its website that "Cellular Transport Technology, or CTT®, is the breakthrough delivery system, used in all of our products[.]"  LIV similarly claims

---

[23]    Popkin, Barry M et al. "Water, hydration, and health."  *Nutrition reviews* vol. 68,8 (2010): 439-58.  (Available at:  https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2908954/

that "Cellular Transport Technology® is a groundbreaking way to get nutrients into the body" and "think of CTT® as the newly-invented engine of the car."[24]  A reasonable consumer is directed to believe from those grandiose claims that LIV, the maker of Liquid I.V., created a new, breakthrough technology that enables, among other things, water to be multiplied within the human body and to provide greater hydration than water alone or other products with the same ingredients.

37.     Significantly, there is no "technology" involved in the absorption of water infused with sugar and salt; it is the human body's natural reaction to naturally occurring ingredients that are ingested.  Second, LIV did not invent or discover a new "technology" that distinguishes itself from other electrolyte drinks.  The science was not only not "untapped," as Liquid I.V. claims, it was strip-mined for use by the 191 member states of the WHO.  ORS was developed by medical professionals, institutions and governments and ultimately promoted by the WHO and UNICEF over 50 years ago.  Liquid I.V.'s "Cellular Transport Technology" is neither a "breakthrough," nor is it "groundbreaking."  "Cellular Transport Technology" is nothing more than a misleading marketing claim aimed at deceiving consumers into believing that Liquid I.V. is groundbreaking, unique and superior to other electrolyte drinks.

## V.     PLAINTIFF PURCHASED AND USED LIQUID I.V. HYDRATION MULTIPLIER

38.     Plaintiff purchased Liquid I.V. Hydration Multiplier in 2021 and 2022 at Wegmans grocery store in West Harrison, New York.  She mixed the Liquid I.V. with water and drank it multiple times.

---

[24]   https://www.liquid-iv.com/articles/liquid-ivs-science-explained

39.     Prior to purchasing Liquid I.V., Plaintiff was exposed to LIV's deceptive marketing and labeling, including the claims that (a) one bottle of prepared Liquid I.V. would provide the same hydration as two to three bottles of plain water and (b) Liquid I.V.'s ability to provide that benefit was due to a new and groundbreaking "technology," the "Cellular Transport Technology®," that other electrolyte drinks mixes do not have.

40.     Had Plaintiff known that (a) one bottle of Liquid I.V. did not provide the hydration of two to three bottles of plain water, and (b) that Liquid I.V. did not have any new and groundbreaking "technology" that other electrolyte drink mixes did not have, she would not have purchased it.  At the very least, if Plaintiff had not been misled by Liquid I.V.'s false hype and wanted ORS that mimicked the formulation developed and later revised by WHO half a century ago, Plaintiff would have purchased that ORS mix, without the false hype, at a fraction of the price of Liquid I.V.  For example, TRIORAL Oral Rehydration Salts mimics precisely the WHO formulation and sells on Amazon for $.87/packet for a one liter serving of ORS, or $.41 for a 16 ounce serving like Liquid I.V.[25]  Liquid I.V., on the other hand, can be purchased at Wegmans grocery store for $1.25/packet and cannot be purchased online for less than $1.50/packet[26] for a serving of 16 ounces (less than one-half of a liter serving).  Liquid I.V. sells for a higher price at many other sellers, *e.g.*, $2.00/packet at CVS.[27]  This is four to five times higher than TRIORAL.

---

[25]     https://www.amazon.com/Rehydration-Organization-Poisoning-Electrolyte-Replacement/dp/B00OG8G9UM?ref_=ast_sto_dp.  This the pricing for 100 packets.

[26]     The largest and most economical package of Liquid I.V. contains 16 packets to make 16 ounce servings.  A box of 15 *one liter* packets of TRIORAL costs $12.99 which means that a 16 ounce serving costs $.41.

[27]     https://www.cvs.com/shop/liquid-i-v-hydration-multiplier-drink-mix-5-65-oz-prodid-543610

## CLASS DEFINITION AND ALLEGATIONS

41.     Plaintiff brings this action on behalf of herself and all other similarly situated consumers in the State of New York pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following class (the "Class"):

> All consumers who, within the applicable statute of limitations period, purchased in the State of New York (whether online or in-person) Liquid I.V. Hydration Multiplier which is manufactured, marketed, distributed and/or sold by Defendant (the "Class Product").  Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers and their immediate family members and associated court staff assigned to this case, and those who purchased the Class Product for resale.

42.     Plaintiff expressly disclaims any intent to seek any recovery in this action for personal injuries that she or any Class member may have suffered.

43.     **Numerosity**.  This action is appropriately suited for a class action.  The members of the Class are so numerous that joinder of all members of the Class is impracticable.  Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of purchasers of the Class Product who have been damaged by LIV's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

44.     **Existence and Predominance of Common Questions of Law and Fact**.  This action involves questions of law and fact common to the Class.  The common legal and factual questions include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 349.

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 350.

- Whether Defendant labeled, advertised, marketed, and/or sold the Class Product as providing two to three times the hydration of plain water which was made possible by a groundbreaking technology created by the maker of Liquid I.V.

- Whether Defendant's labeling, advertising, marketing, and/or selling of each Class Product as providing two to three times the hydration of plain water which was made possible by a groundbreaking technology created by the maker of Liquid I.V. was and/or is false, fraudulent, deceptive, and/or misleading.

45.    **Typicality**.  Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were subject to LIV's blatant misrepresentation that the Class Product provided two to three times the hydration of plain water which was made possible by a groundbreaking technology created by LIV.  Moreover, Plaintiff's claims are typical of the Class members' claims.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

46.    **Adequacy of Representation**.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff purchased the Class Product, and she was harmed by LIV's deceptive misrepresentations.  Plaintiff has therefore suffered an injury in fact as a result of LIV's conduct, as did all Class members who purchased a Class Product.

47.    **Superiority**.  A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against LIV.  It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her.  Further, even if the Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues

in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

48.     Plaintiff seeks monetary damages, including statutory damages on behalf of the entire Class.  Unless a Class is certified, LIV will be allowed to profit from its deceptive practices, while Plaintiff and the members of the Class will have suffered damages.

**COUNT I**
**(Violation of New York General Business Law Section 349)**

49.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 49 as if fully set forth herein.

50.     New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

51.     By labeling, advertising, marketing, distributing, and/or selling the Class Product to Plaintiff and the other Class members as providing two to three times the hydration of plain water which was made possible by a groundbreaking technology created by LIV, LIV engaged in, and continues to engage in, deceptive acts and practices because the Class Product does not, in fact, provide two to three times the hydration of plain water and there is no groundbreaking technology created by LIV that provides that benefit.

52.     In taking these actions, LIV failed to disclose material information about Liquid I.V., which omissions were misleading in a material respect to consumers and resulted in the purchase of the Class Product.

53.     LIV has deceptively labeled, advertised, marketed, promoted, distributed, and sold the Class Product to consumers.

54.     LIV's conduct was consumer oriented.

55.     LIV engaged in the deceptive acts and/or practices while conducting business, trade, and/or commerce and/or furnishing a service in New York.

56.     LIV's false claims were and are misleading in a material respect as to whether the Class Product provided two to three times the hydration of plain water which was made possible by a groundbreaking technology created by LIV.

57.     Based on, among other things, LIV's knowledge that Liquid I.V. did not provide two to three times the hydration as plain water and knew it did not create a groundbreaking technology that transported otherwise unavailable hydration to the cells, LIV knew that by making the misrepresentations addressed herein, Plaintiff and other consumers would be misled into purchasing the Class Product and/or paying a premium price for the Class Product.

58.     Plaintiff and the Class members have been aggrieved by and have suffered losses as a result of LIV's violations of Section 349 of the New York General Business Law.  By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the Class have been substantially injured by purchasing and/or overpaying for the Class Product that is not what LIV represents it to be.

59.     By reason of the foregoing, LIV's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and LIV is liable to Plaintiff and the Class for the actual damages that they have suffered as a result of LIV's actions, the amount of such damages to be determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

60.     LIV's conduct, as alleged herein, in violation of Section 349 of the New York General Business Law was engaged in by LIV willfully and/or knowingly.  Accordingly,

Plaintiff and members of the Class are entitled to an award of damages above and beyond their actual damages in accordance with Section 349(h) of the New York General Business Law.

## COUNT II
### (Violation of New York General Business Law Section 350)

61.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 49 as if fully set forth herein.

62.    LIV's labeling, marketing, and advertising of the Class Products is "misleading in a material respect," as it fails to disclose to consumers material information in LIV's sole possession and, thus, is "false advertising."

63.    No rational individual would purchase the Class Product at the premium prices at which they are sold if that individual knew that the Class Product did not provide two to three times the hydration as plain water and LIV did not create a groundbreaking technology that provided that benefit, which is how LIV markets the Class Product.

64.    LIV's advertisements and marketing of the Class Product s as alleged were consumer oriented.

65.    LIV's advertisements and marketing of the Class Product as alleged were misleading in a material respect.

66.    By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce in New York, Plaintiff and the members of the Class have been substantially injured by overpaying for a product that has diminished value due to the fact that it did not provide two to three times the hydration as plain water and LIV did not create a groundbreaking technology that provided that benefit.

67.     LIV's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and LIV is liable to Plaintiff and the

members of the Class for the actual damages that they have suffered as a result of LIV's actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against LIV as follows:

A.      Certifying this action as a class action as soon as practicable, with the Class as defined above, designating Plaintiff as the named Class representative, and designating the undersigned as Class Counsel.

B.      On Plaintiff's Count I, awarding against LIV the damages that Plaintiff and the other members of the Class have suffered as a result of LIV's actions, the amount of such damages to be determined at trial, plus statutory damages and treble damages.

C.      On Plaintiff's Count II, awarding against LIV the damages that Plaintiff and the other members of the Class have suffered as a result of LIV's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

D.      On Plaintiff's Count I and II, awarding Plaintiff and the Class interest, costs, and attorneys' fees.

E.      Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:      June 7, 2022
            White Plains, New York

                                              **DENLEA & CARTON LLP**

                            By:      */s/ James R. Denlea*
                                        James R. Denlea
                                        Jeffrey I. Carton
                                        Steven R. Schoenfeld
                                        Robert J. Berg
                                        2 Westchester Park Drive, Suite 410
                                        White Plains, New York 10604
                                        Tel.: (914) 331-0100
                                        Fax: (914) 331-0105
                                        jdenlea@denleacarton.com
                                        jcarton@denleacarton.com

                                        **KRAVIT SMITH LLP**

                                        Philip M. Smith
                                        75 South Broadway, Suite 400
                                        White Plains, New York 10601
                                        Tel.: (646) 493-8004
                                        Fax: (917) 858-7101
                                        psmith@kravitsmithllp.com

                                        *Attorneys for Plaintiff*